J-S50042-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIELLE MARIE FALCON | : | |
| | : | |
| Appellant | : | No. 722 WDA 2019 |

Appeal from the Order Entered April 18, 2019
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0002450-2013

BEFORE:   LAZARUS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    FILED NOVEMBER 25, 2019

Appellant, Danielle Marie Falcon, appeals, pro se, from the order entered April 18, 2019, dismissing her first petition filed under the Post Conviction Relief Act ("PCRA")[1] without a hearing.  We affirm.

On May 4, 2016, a jury convicted Appellant of one count of attempted murder, two counts of aggravated assault, two counts of simple assault, and one count of recklessly endangering another person[2] related to a June 18, 2013 incident in which Appellant struck Kaitlin Ruby ("the victim") with her car.  This Court previously summarized the factual background developed at trial as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. §§ 901(a), 2702(a)(1) and (4), 2701(a)(1) and (2), and 2705, respectively.

On June 18, 2013, the victim had plans with Erick Adams (hereinafter "Mr. Adams") and their children. The victim stated that when they returned to Mr. Adams' house and saw Appellant in the driveway, Mr. Adams drove the victim to the tanning salon instead. The victim attempted to call Mr. Adams to pick her up but when he didn't answer, she decided to walk to his residence. As the victim was turning on Buckeye Tram Road, she observed Appellant drive past her and then complete a U-turn in the middle of the road. At this point, Randy Gowton (hereinafter "Mr. Gowton") offered the victim a ride, and dropped her off in front of Mr. Adams' residence. The victim then observed Appellant's vehicle directly behind Mr. Gowton's truck. The victim recalls hearing Appellant gas her vehicle, and as the victim looked back, she saw Appellant's vehicle, coming towards her, and then striking her. The victim remembers being under the vehicle and then lying in the grass while attempting to move. As the victim watched Appellant's vehicle turn around, she remembers yelling "please stop, don't do this." At this point, Appellant exited her vehicle, and told the victim she was going to take her to the hospital. Appellant attempted to pick up the victim and place her in the vehicle. Mr. Gowton returned and stayed with the victim until the ambulance arrived. The victim was then flown by Life Flight to a hospital where she stayed for approximately one month. . . .

Mr. Gowton corroborated the victim's testimony regarding the incident on June 18, 2013. Mr. Gowton testified that he was driving down Buckeye Tram Road, saw a woman whom he knew to be associated with his neighbor, Mr. Adams, and offered her a ride because it started to rain. The woman, later identified as the victim, accepted the ride. While Mr. Gowton was driving the victim to Mr. Adams' house, he noticed a maroon SUV behind him. When Mr. Gowton approached the residence, he pulled over so the SUV could pass, but instead it stopped. After the victim exited the vehicle and as Mr. Gowton was driving away, he looked in his driver side vehicle and observed the vehicle driving through the driveway and striking the victim. Mr. Gowton then parked his vehicle, saw his neighbor Alex, and ordered him to call 911. When Mr. Gowton approached the area of the incident, he observed Appellant attempting to place the victim into her vehicle. Mr. Gowton then pulled the victim out of the vehicle, laid her on the ground, and stayed with her until the firemen and ambulance arrived.

Mr. Adams testified that earlier on the same date, as he was returning to his residence on Buckeye Tram Road with the victim

- 2 -

and their two children, he saw Appellant at his house and continued to drive past his house, and took the victim to Sun Kissed Tanning, approximately one-mile from his residence. Mr. Adams returned home where Appellant was waiting, and Appellant collected her belongings that were still at the residence. When he left with the children to pick up the victim, he was not able to find the victim. Mr. Adams then returned home within minutes after receiving a call from his neighbor about the incident at his residence. When he returned home, he saw the victim lying on the ground and Appellant's vehicle in the yard. Emergency personnel arrived shortly thereafter. . . .

Casandra Rowe (hereinafter "Ms. Rowe") testified as to her relationship with the victim prior to and at the time of the incident. She stated that, around May and June of 2013, the victim lived with Ms. Rowe. At that time, the victim did not have her own cellular phone. However, Ms. Rowe did, in fact, possess a cellular phone in which the victim's Facebook account was added. Ms. Rowe stated that she observed private messages on the victim's Facebook account from Appellant. Ms. Rowe admitted the she was the one who responded to the Facebook messages from Appellant, not the victim. Specifically, Ms. Rowe explained that the initial message was sent from Appellant on June 15th and two days later, Ms. Rowe sent her last text message at approximately 1:00 a.m. on June 18, 2013. Appellant then sent the victim a message at 8:35 a.m. on June 18, 2013, the date of the incident, which stated, "[y]ou look like a beatup China rag doll bitch I will 'F' you up I dare you to step to me I F-in dare you bring it."

Commonwealth v. Falcon, No. 1730 WDA 2016, unpublished memorandum at 1-2 (Pa. Super. filed May 15, 2017) (quoting Trial Court Opinion, 12/20/16, at 1-4) (footnotes and some internal brackets omitted).

On May 4, 2016, Appellant was convicted of the aforementioned charges. On October 11, 2016, the trial court sentenced Appellant to 7½ to 15 years of imprisonment on the attempted murder charge with the remaining charges merging with the attempted murder charge for the purpose of sentencing. Appellant appealed, and this Court issued a decision affirming the

judgment of sentence on May 15, 2017. Appellant did not file a petition for allowance of appeal with our Supreme Court.

Appellant filed, pro se, the instant timely first PCRA petition on May 3, 2018. On May 9, 2018, the PCRA court entered an order appointing Amy Keim, Esquire, as counsel for Appellant and directing Attorney Keim to file an amended PCRA petition or a no-merit letter pursuant to Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988), and Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988) (en banc). On July 2, 2018, the PCRA court granted Attorney Keim's request to withdraw as counsel, appointed Matthew Schimizzi, Esquire, as PCRA counsel for Appellant, and directed Attorney Schimizzi to file an amended PCRA petition or a no-merit letter.

On January 16, 2019, Attorney Schimizzi filed a petition for leave to withdraw as PCRA counsel and a no-merit letter. On February 25, 2019, the PCRA court issued a notice of its intention to dismiss the PCRA petition without further proceedings pursuant to Rule of Criminal Procedure 907(1) ("Rule 907 Notice"). On March 21, 2019, Appellant filed a response to the Rule 907 Notice and an application seeking leave to amend her PCRA petition. The PCRA court granted Appellant's application, and Appellant filed, pro se, an amended PCRA petition on April 12, 2019.

On April 18, 2019, the PCRA court entered an order dismissing Appellant's PCRA petition and amended PCRA petition. The court stated that it had reviewed the amended petition and Appellant had failed to present any additional issues that would entitle her to PCRA relief and therefore the

amended PCRA petition was dismissed on the same grounds as stated in the Rule 907 Notice. In addition, the court granted Attorney Schmizzi's petition to withdraw as Appellant's counsel. Appellant filed, pro se, a timely appeal of the April 18, 2019 order.[3]

In her appeal, Appellant argues that her trial counsel provided ineffective assistance; though her arguments are not divided into separate sections in her brief, we are able to identify nine alleged instances of ineffective assistance.[4] We review the denial of a PCRA petition to determine

_____

[3] The PCRA court did not file an order directing Appellant to file a concise statement of errors complained of on appeal, and instead on May 21, 2019, filed a decree pursuant to Rule of Appellate Procedure 1925(a) stating that the reasons for the decision to dismiss the original and amended PCRA petitions appeared in the Rule 907 Notice.

[4] The argument section of Appellant's brief is presented in a free-flowing format that is not divided into separate sections or even separate paragraphs for each claim of ineffective assistance. See Appellant's Brief at 11-14. Additionally, the "Summary of Argument" portion of Appellant's brief is an interpretation of the facts of the case from her own point of view, with no actual presentation of a summary of her arguments. See id. at 7-10; Pa.R.A.P. 2118 ("The summary of argument shall be a concise, but accurate, summary of the arguments presented in support of the issues in the statement of questions involved."). Despite these deficiencies in Appellant's brief, we nonetheless conclude that our review of this appeal is not impeded.

Appellant also asserts in her statement of questions presented that she is challenging the effectiveness of her counsel in her direct appeal. See Appellant's Brief at 4 ("Whether the PCRA Court erred in failing to grant relief based on Layered Ineffective Assistance of Counsel of Trial and Appellate Counsels?"). However, Appellant did not present any argument regarding the alleged ineffective assistance of appellate counsel and instead her arguments solely relate to trial counsel. In any event, any claim by Appellant of ineffective assistance of counsel on behalf of her appellate counsel would fail because Appellant failed to establish that her trial counsel provided ineffective representation. See Commonwealth v. Mason, 130 A.3d 601, 618-19 (Pa. 2015).

- 5 -

whether the record supports the PCRA court's findings and whether its decision is free of legal error. Commonwealth v. Brown, 196 A.3d 130, 150 (Pa. 2018).

In assessing a claim of ineffective assistance under the PCRA, we begin our analysis with the presumption that counsel has rendered effective assistance. Commonwealth v. VanDivner, 178 A.3d 108, 114 (Pa. 2018). To overcome that presumption, the convicted defendant must establish each of the following three elements:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different.

Id. "Arguable merit exists when the factual statements are accurate and could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination." Commonwealth v. Urwin, ___ A.3d ___, 2019 PA Super 276, *8 (filed September 10, 2019) (citation omitted).

> With regard to the second, reasonable basis prong, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. We will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To establish the third, prejudice prong, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness. We stress that boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective.

Commonwealth v. Chmiel, 30 A.3d 1111, 1127-28 (Pa. 2011) (internal citations and quotation marks omitted).

In her first issue, Appellant argues that trial counsel was ineffective for failing to investigate or present evidence related to her mental health history of post-traumatic stress disorder (PTSD) and anxiety disorder. A review of the record reflects that a mental health evaluation was prepared on December 29, 2014 in advance of trial; following her conviction, the counsel that Appellant retained for the sentencing and appeal was given leave to conduct a second mental health evaluation, which was completed on September 20, 2016 and submitted to the trial court for sentencing. N.T., 10/11/16, at 3. PCRA counsel reviewed these mental health records, as well as a subsequent Department of Corrections psychological evaluation, and determined that, though there was evidence of childhood abuse, no diagnosis of PTSD was made. No-Merit Letter at 3-4; see also N.T., 10/11/16, at 8-9.

To the extent Appellant asserts that trial counsel was ineffective for failing to investigate whether she suffered from PTSD, this claim lacks arguable merit because a mental health evaluation was performed in advance of trial. PCRA counsel's investigation did not reveal that Appellant had been diagnosed with PTSD, and no other evidence of record establishes that Appellant received a PTSD diagnosis. As to the issue of whether trial counsel was ineffective for not introducing evidence related to Appellant's mental health at trial, Appellant has not demonstrated that trial counsel lacked a reasonable basis for not introducing such evidence. Trial counsel's theory of

the case was that Appellant did not intentionally strike the victim with her vehicle, but that the impact was an accident as Appellant was pulling into Adams' driveway. See, e.g., N.T, 5/3/16, at 51, 54; N.T., 5/4/16, at 234-37. Evidence related to Appellant's mental state was not consistent with this strategy. Appellant has not demonstrated that a strategy in which she would concede that her collision with the victim was volitional but should be excused based upon her history of abuse or mental health issues offered a potential for success substantially greater than the strategy actually pursued.[5] Chmiel, 30 A.3d at 1127. Finally, we note that Appellant's pre- and post-trial psychological evaluations were in fact considered by the trial court as mitigating evidence when it issued Appellant's sentence. N.T., 10/11/16, at 8.

Next, Appellant claims that trial counsel was ineffective because he did not call any witnesses to testify regarding her character, her mental health history, and "ongoing issues" with the victim. Appellant's Brief at 12. Trial counsel's failure to call a particular witness does not constitute per se ineffectiveness. Commonwealth v. Cox, 983 A.2d 666, 693 (Pa. 2009). In order to establish that trial counsel was ineffective for failing to call a witness at trial, the PCRA petitioner must demonstrate that:

---

[5] In addition, we further note that the defense of diminished capacity based upon mental defect would not have been available to Appellant unless she had admitted criminal liability and only sought to contest the degree of culpability based upon an inability to formulate the specific intent to kill. Commonwealth v. Hutchinson, 25 A.3d 277, 312 (Pa. 2011).

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

Commonwealth v. Medina, 209 A.3d 992, 998 (Pa. Super. 2019) (citation omitted).

Appellant does not identify any witness who would have testified on her behalf in her appellate brief. In her amended PCRA petition, Appellant identified Bonnie Urbanek and Amber Urbanek, who Appellant claimed would testify that she "[t]ried to present evidence to [trial] [c]ounsel, the plea deal, the relationship between Eric Adams and [Appellant], mental health history, and the pressure inflicted on [Appellant]." Amended PCRA Petition at 4 (unpaginated). However, Appellant failed to plead that trial counsel was aware of either of the identified witnesses or that they were willing to testify on Appellant's behalf. See Medina, 209 A.3d at 998 (trial counsel was not ineffective for failure to call character witnesses where the petitioner did "not plead that trial counsel knew or should have known of the existence of these potential character witnesses"). Furthermore, Appellant has not established that the absence of the testimony of either of the witnesses was so prejudicial as to have denied the defendant a fair trial. Appellant simply states the subjects that these witnesses would testify about without any description of the effect such testimony would have had on Appellant's trial, and several of these identified subjects relate to issues of trial counsel's alleged ineffectiveness that would be relevant only in this PCRA proceeding. See

Commonwealth v. Goodmond, 190 A.3d 1197, 1202 (Pa. Super. 2018) (defense counsel was not ineffective where the petitioner had "failed to establish the absence of the proposed witnesses' testimony was so prejudicial as to deny him a fair trial"). Appellant has therefore failed to establish grounds for PCRA relief on this claim.

In her third issue, Appellant argues that trial counsel was ineffective for failing to disclose discovery material to her. Appellant did not raise this issue in either her initial PCRA petition or her amended PCRA petition. Therefore, this issue is waived. See Pa.R.Crim.P. 902(B) ("Each ground relied upon in support of the relief requested shall be stated in the petition. Failure to state such a ground in the petition shall preclude the defendant from raising that ground in any proceeding for post-conviction collateral relief."); Commonwealth v. Santiago, 855 A.2d 682, 691 (Pa. 2004) ("[A] claim not raised in a PCRA petition cannot be raised for the first time on appeal.").

Appellant next argues that trial counsel was ineffective for failing to impeach the credibility of Mr. Gowton regarding his testimony that he observed Appellant's vehicle striking the victim in Mr. Adams' driveway on Buckeye Tram Road. Mr. Gowton testified that, after he dropped the victim off there and he was approaching an intersection, he had an unobstructed view through his driver's side mirror of Appellant's maroon sports utility vehicle striking the victim. N.T., 5/3/16, at 62-63, 66, 68-69. Appellant contends that Mr. Gowton's testimony was contradicted by Trooper Steven Siko, an expert in crash reconstruction and analysis, who testified that the

scene of the incident was obstructed by hedges and bushes when viewed from the intersection of Buckeye Tram Road and Buckeye Road, the closest intersection to Mr. Adams' house. N.T., 5/4/16, at 166.

Even assuming that Trooper Siko's testimony directly calls into question whether Mr. Gowton had an unobstructed view of the collision, the issue of whether Appellant made impact with the victim was not in dispute at the trial. Appellant provided a written statement to police on the day of the incident in which she admitted that her vehicle made impact with the victim. N.T., 5/3/16, at 102-14. In addition, surveillance video from Mr. Adams' house was played for the jury showing the direct aftermath of the collision in which Appellant exited her vehicle and attended to the victim. Id. at 94-100. The victim likewise testified that she recalled hearing Appellant gas her vehicle and drive "full throttle" at her before the impact. N.T., 5/4/16, at 195. Furthermore, as discussed above, trial counsel's defense rested on the argument that Appellant's contact with the victim was accidental while Appellant was attempting to pull into Mr. Adams' driveway. N.T, 5/3/16, at 51, 54; N.T., 5/4/16, at 234-37. As Appellant conceded that her vehicle made impact with the victim, she has failed to show prejudice from any failure to impeach Mr. Gowton regarding his view of the incident.

In her fifth issue, Appellant argues that trial counsel was ineffective for failing to subpoena "phone records that would have shown ongoing issues with the victim, [Ms.] Rowe, and [] Appellant as well as the relationship [] between Appellant and [Mr.] Adams." Appellant's Brief at 13. The PCRA court

concluded that Appellant had failed to show arguable merit, a lack of a reasonable basis, or prejudice related to this claim. Rule 907 Notice at 9-10. We agree with this assessment. In her PCRA petition, Appellant does not explain how trial counsel subpoenaing her phone records would have potentially affected the outcome of the trial aside from her conclusory allegation that records of her messages with Mr. Adams and the victim would show that their testimony "consisted of perjury." PCRA Petition, Addendum. Similarly, in her brief, Appellant only vaguely asserts that her relationship with Mr. Adams was "a key factor in the issues between Appellant and the victim and was downplayed and misrepresented" during trial. Appellant's Brief at 13. Such boilerplate allegations of ineffectiveness are an insufficient basis upon which to support an award of PCRA relief. Chmiel, 30 A.3d at 1128.

In her next two issues, Appellant contends that trial counsel was ineffective for failing to object to the introduction of messages exchanged between Appellant and the victim that Appellant claims were unfairly prejudicial to her and for failing to introduce forensic evidence. Neither of these issues, however, was pled in Appellant's original or amended PCRA petitions, and therefore these issues are waived. See Pa.R.Crim.P. 902(B); Santiago, 855 A.2d at 691.

In her eighth appellate issue, Appellant argues that trial counsel put "undue pressure" on her to take her case to trial and not accept the plea deal offered by the prosecution that would have required her to serve a three-to-six-year term of imprisonment. Appellant's Brief at 14. Appellant contends

that she was "naïve to the law and what she should do and trusted her lawyer thinking he would not lead her in the wrong directions." Id. Appellant asserts that she was prejudiced based on the substantially longer sentence she received following trial.

This claim lacks arguable merit. "[C]ounsel has a duty to communicate plea bargains to his client, as well as to explain the advantages and disadvantages of the offer." Commonwealth v. Marinez, 777 A.2d 1121, 1124 (Pa. Super. 2001). However, the decision of whether to accept or reject a plea deal is ultimately left to the defendant. Commonwealth v. Copeland, 554 A.2d 54, 60 (Pa. Super. 1988). Beyond her bald assertion that trial counsel applied "undue pressure" on her to not accept the plea offer, Appellant has not alleged that trial counsel provided misleading or incomplete information to her or refused to answer any questions she may have had regarding the offer. Cf. Commonwealth v. Steckley, 128 A.3d 826, 830-32 & n.2 (Pa. Super. 2015) (trial counsel was ineffective where she did not inform defendant during plea negotiations that he would face a 25-year mandatory minimum sentence if convicted following trial and prosecution was offering substantially shorter recommended sentence if defendant entered a guilty plea); Copeland, 554 A.2d at 60-61 (trial counsel was ineffective where he only supplied an "'offhanded' presentation" of the plea deal without a full explanation of the risks and benefits of accepting the deal). Appellant's decision whether to accept the Commonwealth's plea offer was her own, and she is not aggrieved merely because she took the risk of going to trial and

lost. Copeland, 554 A.2d at 60; see also Commonwealth v. Kehr, 180 A.3d 754, 758 (Pa. Super. 2018) ("[N]o one would suggest that a defendant's decision to reject a plea offer in favor of a jury trial 'became' involuntary once the defendant lost and received a harsher sentence than offered by the plea.").

In her final issue, Appellant argues that trial counsel was ineffective because he did not permit Appellant to testify on her own behalf. It is well-settled that

> [t]he decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

Commonwealth v. Sandusky, 203 A.3d 1033, 1075 (Pa. Super. 2019) (citation omitted). Furthermore, "where a defendant voluntarily waives his right to testify after a colloquy, he generally cannot argue that trial counsel was ineffective in failing to call him to the stand." Id. (citation omitted).

At the close of the prosecution's case, trial counsel explained to the trial court that Appellant tentatively had decided not to testify at trial based upon concerns that she would be cross-examined regarding Facebook messages she had sent to the victim; trial counsel then requested that he and Appellant be afforded the opportunity to discuss the subject again during a lunch recess. N.T., 5/4/16, at 215-16, 218. Following the recess, trial counsel informed the

- 14 -

court that Appellant had read the Facebook messages and it was a "tough decision," but she ultimately decided not to testify. Id. at 219, 225. The court then conducted the following colloquy:

Q.     [Appellant], have you had an opportunity to discuss your right to testify at this trial with [trial counsel]?

A.     Yes.

Q.     And has he given you some advice on that issue?

A.     Yes.

Q.     Do you understand that it is only your decision as to whether or not you testify at your trial?

A.     Yes.

Q.     [Trial counsel] cannot make that decision for you. Do you understand that?

A.     Yes.

Q.     Although he can give you certain advice, if you want to testify, that is your absolute right to do so.

A.     Okay.

Q.     Have you had sufficient time to discuss that with [trial counsel]?

A.     Yes.

Q.     Have you made a decision on whether or not you wish to testify at your trial?

A.     Yes.

Q.     What is your decision?

A.     I'm not going to testify.

Q.     Do you have any questions about that?

A.     No.

> Q. Do you need any additional time to speak to [trial counsel] before making that decision?
>
> A. Um, could I have a moment with him?

Id. at 226-27. The trial court then provided Appellant opportunity to discuss the issue further with trial counsel and continued the colloquy:

> Q. You just had a couple of moments to talk to [trial counsel], is that right?
>
> A. Yes.
>
> Q. Are you still intending not to testify?
>
> A. Yes.
>
> Q. Any questions about that?
>
> A. No.

Id. at 227-28.

Based on this colloquy, the PCRA court concluded that Appellant's claim of ineffective assistance related to her decision not to testify lacked arguable merit. Rule 907 Notice at 11-12. We agree. The record reflects that, following consultation with trial counsel and a colloquy by the trial court, Appellant made a knowing and intelligent decision not to testify on her own behalf. No evidence exists that trial counsel interfered with Appellant's right to testify or gave her unreasonable advice regarding the decision whether to testify, but rather trial counsel expressed a valid concern regarding cross-examination related to the Facebook messages with the victim.

For the foregoing reasons, Appellant is not entitled to PCRA relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/25/2019